UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Jabbar Chandler,

    Plaintiff,

    v.                                 Civil Action No. 2:16-cv-22-cr-jmc

C.C.S. Medical Services,

    Defendant.

## REPORT AND RECOMMENDATION
(Doc. 7)

Plaintiff Jabbar Chandler, a Vermont inmate proceeding *pro se*, brings this action against Defendant C.C.S. Medical Services (CCS)[1] alleging violation of his rights under 42 U.S.C. § 1983. Chandler claims that in January 2014, while he was incarcerated at Southern State Correctional Facility in Springfield, Vermont, CCS medical personnel negligently cared for his injured finger, resulting in the finger "heal[ing] curved," with a prognosis of "amputat[ing] or leav[ing] [it] as is" (Doc. 4 at 5), and leaving him unable to work in his trade as a barber (*id.* at 6).

CCS has filed a Motion to Dismiss this action pursuant to Rule 12 of the Federal Rules of Civil Procedure and 12 V.S.A. § 1042. (Doc. 7.) Chandler has not filed an opposition. For the reasons stated below, I recommend that CCS's Motion to Dismiss be GRANTED, with leave to amend.

---

[1] Although Chandler named "C.C.S. Medical Services" as the Defendant in this action, Correct Care Solutions, LLC has responded, on the presumption that it was the party Chandler intended to name. (*See* Doc. 7 at 1, n.1.)

## Analysis

CCS makes three arguments for dismissal of Chandler's Complaint: (1) to the extent Chandler pleads a § 1983 action, he has failed to exhaust his claims through the administrative grievance process, and thus dismissal is required under the Prison Litigation Reform Act (PLRA) and state law; (2) to the extent Chandler pleads a medical malpractice action, it fails for lack of jurisdiction and failure to comply with Vermont's statutory requirements for a medical malpractice claim; and (3) Chandler has failed to effect proper service on CCS, and thus dismissal is required under Federal Rule of Civil Procedure 12(b)(5).

### I. Exhaustion of Administrative Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is "mandatory" and "required" for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) ("[U]nexhausted claims may not be pursued in federal court."). Proper exhaustion of administrative remedies under the PLRA requires inmates to comply with and complete the prison grievance procedures in place at the institution to which they are confined.

*See Jones*, 549 U.S. at 218.  Failure to exhaust is an affirmative defense under the PLRA, to be pleaded and proved by the defendant, *see Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002), and may be "a basis for dismissal for failure to state a claim," *Jones*, 549 U.S. at 216.

Although Chandler's Complaint references "medical malpractice[]" (Doc. 4 at 3), the form on which it was prepared explicitly states that this action "is brought pursuant to 42 U.S.C. § 1983" (*id.* at 1).  Moreover, Chandler's claims relate to medical treatment provided to him while he was incarcerated.  (*Id.* at 4–5.)  Thus, the PLRA's exhaustion requirement applies.  *See, e.g.*, *Wagnoon v. Johnson*, No. 02Civ.10282(RCC)(GWG), 2004 WL 583764, at *1 (S.D.N.Y. Mar. 23, 2004) ("exhaustion requirement applies to all inmate suits about prison life, including . . . medical treatment").  The Complaint concedes that there exists a "prisoner grievance procedure" at the place of Chandler's confinement.  (*Id.* at 2.)  And in fact, the Vermont Department of Corrections (DOC) has promulgated a directive creating a grievance process for resolution of complaints arising from the alleged conduct of DOC representatives.  *See* DOC website, Policies and Directives, Current Policies and Directives, 301-335 Facilities - General, Doc. #320.01, *Offender Grievance System for Field and Facilities* (eff. 1/1/07), *available at* http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/301-335-facilities-general/320.01.pdf (hereafter DOC Directive 320.01).[2]  This grievance process allows an inmate to file an informal grievance, followed by a formal grievance, followed

---

[2] The Court takes judicial notice of the DOC's grievance directives.  *See Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (taking judicial notice of state prison rules and regulations).

by an appeal to the facility superintendent and ultimately to the DOC Commissioner. (*Id.* at 6–15.)

Chandler's Complaint reveals that he did not follow any of the steps of the DOC's grievance procedure (*see* Doc. 4 at 2 (checking "NO" in response to question asking whether Chandler "present[ed] the facts relating to [his] complaint in th[e] grievance program")), but instead, merely "complained to medical person[n]el" about CCS's treatment of his injured finger (*id.* at 3). The Complaint gives the following rationale for Chandler's failure to follow the grievance procedure: "I felt the grievance program couldn't help me with medical malpractice[], because contractors aren't [part of the DOC]." (*Id.*)

The Second Circuit has recognized that, while the PLRA's exhaustion requirement is mandatory, "certain caveats apply." *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004). "These caveats fall into three categories: when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a[] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006). Applied here, neither Chandler's belief that the grievance procedure would not help him, nor the fact that a DOC contractor committed the alleged unlawful conduct, constitutes grounds for excusing him from the exhaustion requirement. First, it is well established that the PLRA applies to prison contractors like CCS. *See, e.g.*, *Frierson v. St. Francis Med. Ctr.*, Civil No.

4

07–3857 (RMB/KMW), 2011 WL 3423930, at *6 n.16 (D. N.J. Aug. 4, 2011), *aff'd*, 525 F. App'x 87 (3d Cir. 2013) ("The language of the PLRA . . . cannot reasonably be read to exempt complaints about medical treatment merely because such treatment was provided by private medical service providers."); *LaBombard v. Burroughs-Biron*, Civil Action No. 2:09-CV-136, 2010 WL 2264973, at *7 n.3 (D. Vt. Apr. 30, 2010), *Report and Recommendation adopted*, No. 2:09 CV 136, 2010 WL 2265004 (D. Vt. June 2, 2010) (PLRA's exhaustion requirement applied to PHS, a private company that "assumed the DOC's constitutional obligation to provide medical care to Vermont prisoners").

Second, although "a reasonable misunderstanding of the grievance procedures" may justify a prisoner's failure to comply with the exhaustion requirement, *Ruggiero*, 467 F.3d at 175, Chandler pleads no facts indicating that his belief that "the grievance program couldn't help [him]" (Doc. 4 at 3) was based on a "reasonable misunderstanding" of the relevant procedures.  The plain language of the DOC's relevant grievance directive includes "complaint[s] regarding a medical or mental health issue." DOC Directive 320.01 at 11.  Chandler also pleads no facts indicating that a prison official misled him regarding the applicable grievance procedures or told him that his issues were non-grievable. *See Lefebvre v. Mickel*, No. 5:12–cv–163, 2013 WL 6247249, at *10 (D. Vt. Dec. 3, 2013) (plaintiff alleged no "special circumstance" justifying his failure to comply with the DOC's grievance process, where complaint included "no allegations that any prison staff told [p]laintiff that his issue was not otherwise grievable"); *compare Gilbeau v. Pallito*, Civil Action No. 1:11–CV–232, 2012 WL 2416719, at *5 (D. Vt. May 22, 2012), *Report and Recommendation adopted*, No. 1:11–

5

cv–232–jgm, 2012 WL 2416654 (D. Vt. June 26, 2012) ("Courts in this circuit have held that an inmate's reasonable belief that an issue is not grievable, *based upon information provided by his jailers*, is a 'special circumstance' that justifies the prisoner's failure to exhaust the administrative process.") (emphasis added).

Because the Complaint reveals that Chandler had administrative remedies available to him but failed to exhaust—or even invoke—them, this action should be dismissed under the PLRA. *See Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) ("PLRA exhaustion is a condition that must be satisfied *before* the courts can act on an inmate-plaintiff's action."); *Snyder v. Whittier*, 428 F. App'x 89, 92 (2d Cir. 2011) ("Where, as here, a prisoner fails to properly exhaust his administrative remedies before filing suit, the action must be dismissed.").

## II. Medical Malpractice Claim

As stated above, Chandler's Complaint references "medical malpractice[]" (Doc. 4 at 3) and describes alleged deficiencies in the medical treatment, or lack thereof, provided by CCS to Chandler (*id.* at 4–5). Other than the citation to § 1983 in the complaint form, Chandler does not reference any federal law or the United States Constitution in the Complaint. Thus, the case appears to be a state-law medical-malpractice action presenting no federal question under 28 U.S.C. § 1331, and subject to dismissal for lack of subject-matter jurisdiction. *See Owens v. Bellevue Hosp. Ctr.*, 101 F.3d 109, 1996 WL 134227 (Table) (2d Cir. 1996) ("Allegations of medical malpractice or negligent failure to provide treatment will not suffice to support an action under 42 U.S.C. § 1983."); *Engelhardt v. Beth Israel Med. Ctr.*, No. 00 Civ. 2239(AKH), 2000 WL 1871736, at *4

(S.D.N.Y. Dec. 20, 2000) ("Section 1983 claims are not to be used to duplicate state tort law at the federal level.") (internal quotation marks omitted); *see also Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 25 (2d Cir. 2000) ("Federal question jurisdiction exists where a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.") (internal quotation marks omitted). Moreover, there is no basis for diversity jurisdiction under 28 U.S.C. § 1332(a) because the Complaint does not plead an amount in controversy exceeding $75,000 in value. *See Palmermo v. Fid. & Guar. Ins. Co.*, No. 1:08-CV-218, 2009 WL 88340, at *2 (D. Vt. Jan. 12, 2009) ("The amount in controversy, as a jurisdictional fact, is generally evaluated on the basis of the pleadings.").

    Even assuming the court has jurisdiction over Chandler's medical malpractice claims, the Complaint does not allege that Chandler has complied with the pre-filing requirements of 12 V.S.A. § 1042. That statute mandates that a plaintiff bringing a medical malpractice claim must file, along with the complaint, a "certificate of merit" certifying that the plaintiff has consulted with a health care provider qualified to serve as an expert witness, and that the provider offered an opinion: (1) describing the applicable standard of care; (2) indicating that there is a reasonable likelihood that the plaintiff will be able to show that the defendant failed to meet that standard of care; and (3) indicating that there is a reasonable likelihood that the plaintiff will be able to show that the defendant's failure to meet the standard of care caused the plaintiff's injury. 12 V.S.A. § 1042(a). Failure to file the certificate of merit "shall be grounds for dismissal of the

action without prejudice." *Id.* § 1042(e). There is no indication that Chandler has filed the requisite certificate, and the Complaint contains no allegation regarding either the applicable standard of care or how CCS medical personnel breached that standard. Thus, dismissal is proper on these alternate grounds.

### III. Service of Process on CCS

Finally, CCS contends the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process because it was served on a "Shift Supervisor" at the Southern State Correctional Facility, who is neither an employee of CCS nor an agent authorized to receive service of process on behalf of CCS. (Doc. 7 at 8; Doc. 7-1 at 1, ¶ 4.) *See* Fed. R. Civ. P. 4(h); Vt. R. Civ. P. 4(d)(7). Moreover, CCS argues that CCS has no employees or independent contractors in Vermont, and Southern State Correctional Facility is not a place of business or office for CCS. (Doc. 7 at 8; Doc. 7-1 at 1, ¶¶ 3, 5.)

"[C]ompliance with the rules governing service of process is to be construed in a manner reasonably calculated to effectuate their primary purpose: to give the defendant adequate notice that an action is pending." *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F. Supp. 1237, 1251 (S.D.N.Y. 1977) (citing *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310 (1945)); *see Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986) ("Rule 4 of the Federal Rules is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice.") (internal quotation marks omitted). Here, the fact that CCS has filed the instant Motion to Dismiss on grounds other than Rule 12(b)(5) indicates that

it received adequate notice of Chandler's Complaint and the claims made therein.  Thus, dismissal for insufficient service of process is unfounded.  Because CCS has retained counsel, it may be possible for counsel to accept service on behalf of CCS.  Otherwise, the court should direct the U.S. Marshal's Service to accomplish proper service within 30 days.  *See Kavazanjian v. Rice*, No. 03-CV-1923 (FB)(SMG), 2005 WL 1377946, at *2 (E.D.N.Y. June 6, 2005) ("For plaintiffs proceeding *in forma pauperis*, . . . the Marshal's Office-not the plaintiff-is primarily responsible for effecting service.") (citing 28 U.S.C. § 1915(d)).

## IV.  Leave to Amend

The Second Circuit has emphasized that a district court should not dismiss a *pro se* filing "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted); *see Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("a *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once").  "[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."  *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008).

Because Chandler may have a basis for claiming that CCS violated a constitutional right, I recommend that he be granted leave to replead his claim.  If Chandler chooses to submit an amended complaint, it shall be titled "Amended Complaint" and shall contain all claims against all parties, as it will supersede the original Complaint in all respects.

## **Conclusion**

For these reasons, I recommend that CCS's unopposed Motion to Dismiss Chandler's Complaint (Doc. 7) be GRANTED without prejudice.  I further recommend that, if this Report and Recommendation is adopted by the court, Chandler be allowed 30 days to file an amended complaint.  Failure to file an amended complaint within that time frame should result in the dismissal of Chandler's claims with prejudice.

Dated at Burlington, in the District of Vermont, this 11th day of July, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).